**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

| | |
|---|---|
| LEXMARK INTERNATIONAL, INC.<br><br>Plaintiff,<br><br>v.<br><br>INK TECHNOLOGIES PRINTER SUPPLIES, LLC, ET AL.<br><br>Defendants. | Civil Action No.<br>1:10-CV-564-MRB |

**ORDER GRANTING LEXMARK'S MOTION FOR CONTEMPT AGAINST
DIRECT BILLING**

This matter is before the Court on Lexmark International Inc.'s ("Lexmark") Motion for an Order finding Defendant Direct Billing International Incorporated d/b/a Office Supply Outfitters ("Direct Billing") in Contempt of the Court's Stipulated Permanent Injunction Order (ECF 105).  After consideration of the pleadings and supporting declarations, as well as the arguments presented during the hearing conducted on the September 24, 2014, the Court finds that a sufficient basis exists for the relief requested in Lexmark's Motion.  **IT IS HEREBY FOUND, ORDERED, AND ADJUDGED** that:

1.   On September 14, 2011, this Court entered a Stipulated Permanent Injunction enjoining Direct Billing from, *inter alia*, importing, selling, or offering for sale toner cartridges suitable for use in Lexmark's T610/T612/T614/T616; T620/T622; T630/T632/T634; T640/T642/T644; E120; E220; E230/232/232/234/238/240; E320/322; E321/E323; E330/E332; E340/E342; and E250/350/352/450 laser printers that infringe

1

any asserted claims of Lexmark's patents or that are not more than colorably different from such cartridges. (ECF 105, ¶¶ 1, 9).

2. The Court's Stipulated Permanent Injunction was definite and specific.

3. After September 14, 2011, Direct Billing imported and/or sold clone and remanufactured toner cartridges, including toner cartridges for use in Lexmark's T610/T612/T614/T616; T620/T622; T630/T632/T634; T640/T642/T644; E120; E220; E230/232/232/234/238/240; E320/322; E321/E323; E330/E332; E340/E342; and E250/350/352/450 laser printers and the equivalent monochrome laser printers sold under private label identified in Paragraph 8 in Lexmark's Amended Complaint and Second Amended Complaint, including but not limited to equivalent Dell and IBM monochrome laser printers (collectively, "the Accused Cartridges").

4. Lexmark filed its motion for contempt against Direct Billing on February 6, 2014. (ECF 577).

5. "[E]very injunction carries with it the prospect that a violating party can be penalized for contempt of court." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006).

6. The purpose of a contempt proceeding is to "enforce the message that court orders and judgments are to be taken seriously." *Elec. Workers Pension Trust Fund v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003) (citing *N.L.R.B. v. Cincinnati Bronze, Inc.,* 829 F.2d 585, 588 (6th Cir. 1987)).

7. "[T]his power 'is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration, whose judgments and

decrees would be only advisory.'" *Id.* (*quoting Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911).

8. Courts can sanction contemptuous conduct "'for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.'" *Id.* at 379 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)).

9. To establish civil contempt, a movant need only establish that: (1) a party failed to comply with a definite and specific order; and (2) the party had knowledge of the court order. *N.L.R.B.*, 829 F.2d. at 591; *see also Elec. Workers*, 340 F.3d at 379.

10. Once this showing of a violation is made, the burden then shifts to the alleged contemptor who must "categorically and in detail" show why it is unable to comply with the court's order. *Rolex Watch USA, Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996). The alleged contemptor has the burden of showing that it took "all reasonable steps within [its] power to comply with the court's order." *Elec. Workers,* 340 F.3d at 379.

11. The Accused Cartridges sold by Direct Billing are not colorably different from the cartridges that Direct Billing sold prior to entry of the Stipulated Permanent Injunction.

12. The Accused Cartridges sold by Direct Billing infringe the patent claims identified in the table below:

| Lexmark's Patents | Accused Cartridges | | | | | | |
|---|---|---|---|---|---|---|---|
| | E120 | E23X/E24X/ E33X/E34X | E260/ E360/E460 | E25X/ E35X/E45X | T52X/T61X/ T62X/T63X/ T64X/T65X | E320/ E322 | E220 and E321/E323 |
| **5,337,032** | | | | | 1,5,6 | | |
| **5,634,169** | | | 32,36,42 | | 1-3,32-34, 36, 42 | 32,36,42 | 32,36,42 |

3

| Lexmark's Patents | Accused Cartridges | | | | | | |
|---|---|---|---|---|---|---|---|
| | E120 | E23X/E24X/ E33X/E34X | E260/ E360/E460 | E25X/ E35X/E45X | T52X/T61X/ T62X/T63X/ T64X/T65X | E320/ E322 | E220 and E321/E323 |
| **5,758,231** | | 1-16 | 1-16 | 1-16 | | 1-16 | 1-16 |
| **5,758,233** | | | | | 1-4 | | |
| **5,768,661** | | | | | 1,2,3,6 | | |
| **5,802,432** | | | | | 1-3, 7-9 | | |
| **5,875,378** | | | | | 1-3,12-14,24 | | |
| **5,995,772** | | | 14,15,22, 32-34 | | 1-3,5,7-9, 12,14- 18,20,21 | 14,15,22, 32-34 | 14,15,22, 32-34 |
| **6,009,291** | 1-2 | 1-2 | 1-2 | 1-2 | 1-2 | | |
| **6,078,771** | 1,5,6,10, 12,13,15 | 1,5,6,10, 12,13,15 | 1,5,6,10, 12,13,15 | 1,5,6,10, 12,13,15 | 1,2,5,6,10, 12,13,15 | | |
| **6,397,015** | | | 1,2,4, 9,17,19 | | 1-4,7-12, 14-19,22-24 | 1,2,4, 9,17,19 | 1,2,4, 9,17,19 |
| **6,459,876** | | | | | 1-28 | | |
| **6,487,383** | 1,2,6, 10,15,19 | 1,2,6, 10,15,19 | 1,2,6, 10,15,19 | 1,2,6, 10,15,19 | 1,2,6,10, 11,15,19 | 19 | 19 |
| **6,496,662** | | 1,3,5,7 | | 1,3,5,7 | | | |
| **6,678,489** | | 5, 6 | 5, 6 | 5, 6 | | | |
| **6,816,692** | 1-13 | 1-13 | 1-13 | 1-13 | | | |
| **6,871,031** | | 1-6,8-12 | 1-6,8-12 | 1-6,8-12 | | | |
| **6,879,792** | | 1-11 | 1-11 | 1-11 | | | |
| **7,139,510** | | 1-10 | 1-10 | 1-10 | | | |
| **7,233,760** | 1-10, 11,12,14 | 1-10, 11,12,14 | 1-10, 11,12,14 | 1-10, 11,12,14 | | | |
| **7,305,204** | | 1-20 | 1-20 | 1-8,10-13 | | | |

13. Direct Billing did not satisfy its burden of proving categorically and in detail why it was unable to comply with the Stipulated Permanent Injunction.

14. Direct Billing did not satisfy its burden of proving that it took all reasonable steps within its power to comply with the Stipulated Permanent Injunction.

15. Direct Billing is therefore held in contempt for violation of this Court's Stipulated Permanent Injunction as a result of Direct Billing's importation and/or sale of the Accused Cartridges.

16. Direct Billing's infringement of Lexmark's patents and violation of this Court's Stipulated Permanent Injunction was willful.

4

17. As a result of its willful infringement of Lexmark's patents and contempt of this Court's Stipulated Permanent Injunction and, Direct Billing shall pay Lexmark the following damages:

| Damages Description | Amount |
| --- | --- |
| Lost Profits (Trebled) | $45,484.59 (*i.e.*, $15,161.53 x 3 = $45,484.59) |
| Prejudgment Interest | $1,119.30 |
| Reasonable Attorneys' Fees | $45,000 |
| **Total Damages Award** | **$91.603.89** |

Date: October 9, 2014

s/Michael R. Barrett  
MICHAEL R. BARRETT, Judge  
United States District Court